Vanessa R. Waldref
United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-CR-00068-RMP-1 |
| Plaintiff, | UNITED STATES' SENTENCING POSITION |
| v. | Sentencing Hearing: |
| BRIAN D. KNIGHT, | June 21, 2022, at 10:30 a.m. |
| Defendant. | Spokane, Washington |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney for the Eastern District of Washington, hereby submits the following Sentencing Memorandum with regard to Defendant Brian D. Knight ("Defendant"). The United States recommends a significantly-below Guidelines sentence of 84 months (7 years) in custody, a lifetime of supervised release, no fine, a mandatory special assessment of $100, a $5,000 special assessment absent a finding of indigence by the Court, and up to a $17,000 Special Assessment because the charge of conviction is Possession of Child Pornography.

The United States' sentencing position is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 17, 2021

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

After illicitly downloading pornographic images of children for years, such that he sustained a previous state conviction for engaging in child pornography conduct, Defendant Brian Knight ("Defendant") has pleaded guilty to a single federal count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1). Defendant's personal history and characteristics include several specific, troubling factors that warrant an 84-month sentence. In addition to apparently not learning anything from his prior child pornography conviction or prison time, Defendant has demonstrated an ongoing sexual interest in children by seeking to gain in-person access to autistic children through a program he invented – under an alias – called "Fish4Kids," which never actually provided any aquariums to anyone. He also lied to law enforcement, wiped his devices to hide the true volume of his child pornography collection, and bookmarked multiple child rape stories, including one called "baby Sex Is the Best.tx." Completely separate from his sexual interest in children, he has also engaged in multiple domestic violence ("DV") assaults, interference with DV reporting, and cyberstalking/threats to make people "suffer."

In short, while the Court has sometimes expressed concerns about lengthy sentences for child pornography offenders who are in the federal system for the first time, this particular Defendant is *not* the kind of no-prior-criminal-history, no-other-evidence-of-sexual-interest-in-children, first-time-offender for whom a sentence as low as 36 months, or even 60 months, is warranted. His Guidelines range is 210-240 months, and it should be.

Nevertheless, the United States recognizes that there is some mitigation present in the Presentence Investigation Report ("PSIR"), which is the reason that the United States resolved this case at a Rule 11(c)(1)(C) range of 36-84 months (3-7 years), rather than at the 60-month (5-year) mandatory minimum or Guidelines range of 210-240 months (17.5-20 years) that would otherwise apply to Defendant based his offense conduct.

United States' Sentencing Position – Knight – page 1

Indeed, Defendant's particular mitigating factors (he reports having suffered abuse as a child, two strokes, traumatic brain injury, epilepsy, and multiple suicide attempts, among other things) are the very reasons that the United States has agreed to recommend a sentence of only 84 months—more than *10 years below* the low end of Defendant's Guidelines range of 210 months. When the United States recommends a variance so far beneath a Defendant's Guidelines range, it urges the Court not to depart even further below the Defendant's properly-calculated range. Because the Guidelines are the "starting point" and "initial benchmark" for sentencing, *United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008), and the United States is obliged to seek a sentence that will be sufficient but not greater than necessary to avoid sentencing disparity, punish, protect the community, and deter, the United States recommends a sentence of 84 months, to be followed by a lifetime of Supervised Release.

## II.    Facts

The relevant facts are set forth in the *Offense Conduct* section of the PSIR, ECF No. 64, ¶¶ 8-18, and the *Factual Basis* section of Defendant's Plea Agreement, ECF No. 49, ¶ 6. Defendant is a sophisticated technology user who has been engaging in recidivist child exploitation conduct since at least 2009. ECF No. 64, ¶¶ 59-64. Troublingly, there was sufficient probable cause for him to be charged with first degree rape of a child based on his daughter's disclosures that he had repeatedly forced her to perform oral sex on him. *Id.* He was acquitted of that charge. *Id.* It is unclear whether the trial jury refused to believe the child victim, convicted him of child pornography possession as a way of splitting the baby in the jury room, or came to some other conclusion about the evidence presented in that state case; regardless, he was sentenced to 14 months in custody. *Id.*

Defendant also had no fewer than six prior violation processes related to noncompliance with his community supervision. *Id.* The majority of those instances of noncompliance came from his failure to participate in sex offender therapy, which should concern the Court greatly.

The Court might well think such sanctions would deter Defendant from engaging in future child pornography conduct, but it did not. In 2019, FBI downloaded files from Defendant that were consistent with his daughter's accusation, insofar as they demonstrate Defendant's sexual interest in both the rape of children and incest. *Id.* One such file was particularly chilling, given his daughter's disclosure: "Cp 6Yo-7Yo Fuck Uncle Pthc – Open-Nobull Family Fun Dad Teaches Bro And Sis Abt 9,10 Kid Sex Incest Pedophilia Boy Girl 12.38.mpb." ECF No. 64, ¶ 10. The title appeared to accurately describe the kind of child pornography Defendant sought out, searched for, downloaded, and possessed:

> *The video depicts a named man masturbating into the anus of a naked prepubescent child. The man then appears to penetrate the child's anus with his penis, the man roughly flips over the child from being on her hands and legs, over onto her back, and it can be seen the child is a female. The man masturbates and rubs his penis on the girl's vagina then attempts to penetrate her anus. The video then changes to depict a prepubescent boy orally copulating a prepubescent girl. The prepubescent girl masturbated the prepubescent boy, then orally copulates him.*

*Id.* Other similar videos were also recovered from his digital devices. ECF No. 64, ¶ 12.

When FBI executed a search warrant at Defendant's residence, he not only failed to take responsibility for his conduct; he out-and-out lied to investigators by repeatedly denying that he used his sophisticated digital and computer equipment to download child pornography, including when he was confronted about FBI having downloads from him as early as 2017. ECF No. 64, ¶ 14-18. He also clearly wiped his devices of child pornography, bookmarked multiple child rape stories, and ran what appears to be a sham foundation so he could get access to autistic children. *Id.*

Based on all of the information before the Court, a sentence of 84 months, but no lower, is appropriate for *this* Defendant based on *his* history and characteristics, and *his* offense conduct.

## III. The Presentence Report

For purposes of calculating the appropriate range under the United States Sentencing Guidelines (the "Guidelines"), the United States concurs with the Probation Office that Defendant's final adjusted offense level is Level 35. ECF No. 64, ¶ 40. The Probation Officer concluded that Defendant has 4 criminal history points, placing him in Criminal History Category III. ECF No. 64, ¶ 71. Defendant's Guidelines properly-calculated Guidelines range is 210-240 months. ECF No. 64, ¶ 120.

## IV. The United States' Sentencing Recommendation

The United States respectfully recommends a significantly-below-Guidelines sentence of 84 months (7 years) in custody, a lifetime of supervised release, no fine, restitution as requested, and appropriate special assessments. The United States submits that such a sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth at 18 U.S.C. § 3553.

### A. Nature and Seriousness of the Offense and Respect for the Law

Defendant's sentence should be significant. His offense was serious and longstanding, he demonstrated consciousness of guilt by shredding his child pornography, he showed disregard for the law both by lying to law enforcement officers, and despite being caught engaging in child pornography conduct on at least one prior occasion, he has continued to act on his sexual interest in children by downloading child pornography. He also appears to have created a fake "foundation" for the sole purpose of giving him access to autistic children, presumably for potential abuse.

It is perhaps possible to become inured to the harms caused by child pornography, given how many child pornography cases are prosecuted. But it is important to remember that the collection and distribution of child pornography is devastating conduct. Basic human decency – and respect for the victims depicted in Defendant's collection – demands that the United States, the Court, and Defendant all acknowledge that child pornography constitutes not only a past harm, but an ongoing harm to the children depicted.

United States' Sentencing Position – Knight – page 4

Defendant has participated in and created a market for additional images of child abuse. As the Supreme Court has recognized, the prevention of sexual exploitation and abuse of children is an "objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982). Unsurprisingly, "[t]he legislative judgment as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758. This harm is caused not only by the abusive acts perpetrated during the production of child pornography, but also the enduring record of the abuse:

> [T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in the years to come. The . . . ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (citations omitted). A sexually abused child who has been photographed must go through life knowing that these images are circulating within the mass distribution system for child pornography. *Ferber*, 458 U.S. at 758 n.9 & 760 n.10 (discussing harms caused by child pornography).

The Ninth Circuit has rejected the argument that child pornography is a victimless crime and has recognized that child pornography victimizes the sexually exploited children depicted in the images:

> After all it was the children depicted -- and not society at large -- who were acted on and adversely affected, who oftentimes were forced to participate in the production of the pornography in which [Defendant] traded, who were injured (both physically and psychologically) as a result of [Defendant's] patronage of the porn industry, who were sacrificed to satisfy [Defendant's] curiosities, who were subjected to the cruelest form of oppression, hardship, and mistreatment at the hands of pornography producers and photographers, and whose lives were quite possibly destroyed in the process.

*United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997).

The Ninth Circuit has specifically found that the legislative history of the child pornography statutes indicates that Congress sought to protect the children involved in the production of child pornography by prohibiting its distribution and possession:

> (1) Congress determined that child pornography is a multi-million dollar industry in which sexually explicit depictions of children are bought, sold, and traded interstate; (2) Congress decided to "stamp out" the market for child pornography by criminalizing the production, distribution, receipt, and possession of child pornography; and (3) Congress thought it could strike a blow to the industry by proscribing possession of child pornography "because those who possess and view child pornography encourage its continual production and distribution." 136 Cong. Rec. at S4730.

*United States v. Adams*, 343 F.3d 1024, 1032 (9th Cir. 2003).

Thus, based on his distribution, receipt, and possession of images, Defendant participated in conduct that "is intrinsically related to the sexual abuse of children" both because "the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled," and because it constitutes a "permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Ferber*, 458 U.S. at 759. Time and again, the Supreme Court has emphasized that the evil wrought by the distribution of child pornography is not merely instrumental; Defendant's conduct guarantees that the underlying abuse is "in effect repeated" since the victim knows "her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Paroline v. United States*, 134 S. Ct. 1710, 1717 (2014). Thus, Defendant's consumption and collection of child pornography, in addition to perpetuating the trauma and shame suffered by the victims, further bolstered a market that induces the exploitation of children.

Defendant indisputably created and curated a significant collection of images, beyond the mere 600 sufficient to trigger the highest quantity enhancement under the Guidelines, as he admitted. But here, where Defendant used sophisticated programs to shred his collection, neither the United States, nor the Court, nor probably even

Defendant, can state with any accuracy how big his collection actually was. Regardless, it is clear that Defendant spent significant time searching for, downloading, and viewing the child pornography files he amassed, using them for his own gratification and then deleting them to evade detection by law enforcement.

Defendant's conduct – including installing software programs for the purpose of anonymizing and shredding child pornography conduct, and then lying about his knowledge and searching behavior when speaking to law enforcement – demonstrates an almost-perfect example of consciousness of guilt, in addition to constituting a concerted and intentional effort to thwart law enforcement. In addition, the persistency of Defendant's conduct speaks to his inability to control his criminal sexual impulses and increases the likelihood of his recidivism. The profound sexual violence contained in the images that Defendant preferred speaks for itself.

But the Court should also consider other important factors present here. First, the specific kind of child pornography he sought out and collected included father-daughter incest—which is consistent with the conduct disclosed by his own daughter. A jury found him legally innocent of raping that child, but there is nothing that prevents this Court from coming to a conclusion that fairly jumps from the pages of his PSIR: his child pornography conduct in this case was consistent with her disclosures. Defendant also sought out, maintained, and bookmarked child rape stories, which is deeply troubling conduct, particularly for a person with now two convictions for child pornography. The title of one of them is simply chilling: "baby Sex Is the Best.tx."

Of particular concern to the United States is Defendant's fanciful "Fish4Kids Foundation," which he opened and "ran" under a pseudonym. This entire operation appears to have been designed to put him in in-person contact with children with autism or other developmental disabilities, a vulnerable population if ever there were one. As with his child pornography deletion conduct, the fact that he set up and ran this "foundation" under one of his pseudonyms demonstrates consciousness of guilt. If a

parent tried to get to the bottom of "Fish4Kids," that parent would find only "Erik James Parsons," not Brian Knight. ECF No. 64, ¶ 17.

The stated goal of this "foundation" was to give aquariums to autistic children. *Id.* But by Defendant's own admission, it *never gave a single aquarium to anyone.* For someone without Defendant's sexual interest in children, that might be written off mere ineffectuality, based on a lack of ability or follow-through to run a successful foundation. But for someone with Defendant's personal history and characteristics, it is difficult to come to any conclusion other than that "Fish4Kids" was a sham designed for the purpose of putting Defendant, a sex offender, around kids who might not be able to protect themselves from him. In the case of potential nonverbal autistic victims, they would not necessarily have been able to report misconduct. By any measure, this particular Defendant is not the federal child pornography offender whose conduct merits a sentence of only 36 or 60 months.

### B. Defendant's Personal History and Characteristics

Defendant's personal history and characteristics do not absolve him of responsibility for his child exploitation. Defendant's life has had challenges, to be sure, and the United States' significantly-below-Guidelines sentence takes into account the mitigating factors set forth in the PSIR. The United States anticipates a defense sentencing position that will focus on Defendant's physical ailments, while largely ignoring both the risk he poses to additional victims in the community and his recidivism.

The Court should of course consider Defendant's mitigation. And it should balance out that information with the fact that not one of Defendant's ailments kept him from engaging in repeated domestic violence conduct, including interfering with reporting, or engaging in cyberstalking that included significant threats against others – to say nothing of engaging in repeated child pornography conduct. Those ailments also did nothing to keep Defendant in compliance with sex offender treatment or his community sanctions. The cold, hard fact is that Defendant has demonstrated that he is a danger to the community, and he will continue to be, regardless of his ailments. Balancing

Defendant's mitigation with his criminal history and offense conduct, the United States urges the Court to give Defendant more than 10 years off the low end of his Guidelines—that is, impose a sentence of 84 months.

### C. Just Punishment

Defendant's child exploitation conduct demands serious punishment, and the only mechanism for accountability is the sentence imposed by this Court. When someone violates the law repeatedly and egregiously – to say nothing of violating moral and ethical codes and the human law that adults are obliged to protect children from harm, not endanger them – justice demands that the person be punished significantly. Here, taking into account Defendant's substantive child pornography conduct, and apparent inability to stop engaging in it, regardless of a prior conviction and prison time, it is clear that a severe punishment is appropriate and necessary. 84 months (7 years) is sufficient, but not greater than necessary; any lower sentence would fail to meet the statutory goals of sentencing.

### D. Deterrence

A significant sentence is also necessary to deter Defendant and others from engaging in additional child exploitation offenses. Only if people who have sexual interests in children know that they may go to federal prison for a long time will they be disincentivized from acting on their worst impulses. Defendant has demonstrated, through his repetitive and ongoing conduct, that specific deterrence is necessary here.

This Court's sentence must be long enough to make Defendant take it seriously; to deter him, his sentence has to be distasteful enough that when he gets out, he knows that the penalty for this kind of conduct is severe. It is clear that even his prior prison sentence did not have an appropriately deterrent impact.

General deterrence is also an important goal of sentencing. Child pornography enthusiasts in this District need to know that when they engage in this kind of conduct repeatedly, the consequences will include a lengthy term in federal prison. 84 months is sufficient, but not greater than necessary, to achieve these goals.

United States' Sentencing Position – Knight – page 9

### E. Protection of the Public

Children in the Eastern District and elsewhere deserve to live in a world in which they are safe from Internet predation, in any form. Defendant presents a danger to the community, and there is little question that he would still be endangering children if the FBI had not located him online. The question for this Court is stark: what sentence is necessary to protect the children of Eastern Washington and elsewhere from an adult who is so relentless about exploiting them and creating a market for their future abuse? The community depends on the Court to be its voice, and the community deserves a clear statement that child pornography recidivism cannot be tolerated in a just society.

The need to protect the public also justifies a lifetime of supervised release. Defendant has amply demonstrated throughout his adult life that he has little interest in complying with probation or supervision. Defendant has chafed under the yoke of community conditions, and that is part of the reason why he must be supervised forever. If he violates his supervision, the answer is simple: he will be returned to custody for breaching the Court's trust. Defendant has amply demonstrated that he requires supervision for the rest of his life.

### F. Avoidance of Unwarranted Sentencing Disparities

The best way to ensure consistent sentences for similarly-situated defendants across the country is for courts to apply the sentencing Guidelines in the same manner everywhere. *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that the Guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly."). Here, the United States' recommendation takes into account Defendant's substantive child pornography conduct, past history, demonstrated lack of respect for the law, and blatant willingness to ignore court orders while on supervision. Still, based on his personal history and characteristics, the United States has recommended a below-Guidelines sentence. As this Court knows

all too well, the standard sentence in this District for this conduct is 60 months (5 years). Any sentence lower than that would surely create unwarranted sentencing disparity. To the contrary, the United States submits that Defendant's recidivism and criminal history warrant an additional two years in custody – which would still be more than a decade less than Defendant's actual Guidelines range.

### G. Fine, Special Penalty Assessment, Restitution, and Forfeiture

The United States is free to make any recommendation concerning a criminal fine. The Probation Officer has analyzed Defendant's financial condition and has concluded that he does not have the financial means, assets, and/or resources available to reasonably make payment on financial obligations imposed by the Court. ECF No. 64, ¶ 97. Accordingly, the United States does not seek a fine. A $100 special assessment is mandatory. The United States defers to the Court regarding Defendant's indigence and the applicability of the $5,000 Special Assessment pursuant to the Justice for Victims of Trafficking Act of 2015 and the up-to-$17,000 Special Assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. Restitution of no less than $3,000 per requesting victim is appropriate.

## V. Conclusion

For the foregoing reasons, the United States recommends that the Court calculates Defendant's sentencing range at 210-240 months and imposes a sentence of 84 months (7 years) in custody, to be followed by a lifetime of supervised release.

Dated: June 17, 2022

Vanessa R. Waldref
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney